J. S. J. LYELL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 43540.   Promulgated October 20, 1933.

*W. Leo Austin, Esq., L. E. Cahill, Esq.,* and *George H. Abbott, C.P.A.,* for the petitioner.

*W. R. Lansford, Esq.,* and *E. G. Sievers, Esq.,* for the respondent.

OPINION.

MATTHEWS: 1. The relevant sections of the 1924 Revenue Act are set out in the margin.[1] The first question is whether respondent

---

[1] SEC. 204. (c) The basis upon which depletion, exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the same as is provided in subdivision (a) or (b) for the purpose of determining the gain or loss upon the sale or other disposition of such property, except that in the case of mines, oil and gas wells, discovered by the taxpayer after February 28, 1913, and not acquired as the result of purchase of a proven tract or lease, where the fair market value of the property is materially disproportionate to the cost, the basis for depletion shall be the fair market value of the property at the date of discovery or within thirty days thereafter; but such .

allowed an adequate amount of depletion in 1924 in respect of the one-eighth royalty interest owned by petitioner in a 60-acre tract of oil and gas lands in Union County, Arkansas; and this depends, all other facts and factors having been stipulated by the parties, on the discovery value of the petitioner's interest in the tract when oil was found there on June 25, 1923. Petitioner claims a discovery value of $80,000, but respondent has allowed only $32,500.

The evidence showed that petitioner's 60-acre tract lay directly between two producing wells, one about two miles to the southeast and the other three miles to the northwest. There was also a gas well two miles to the north. On the basic, or discovery, date in 1923, the only known oil sand in the field was the first, or Smackover, sand.

The petitioner testified that on the eve of discovery, between June 15 and 20, 1923, he had received an offer of $6,000 for a one sixty-fourth interest in 40 of the 60 acres over which his royalty extended. Petitioner declined this offer because he thought the interest was worth $10,000. Evidence was also put in to show that there had been a sale, between June 10 and 20, 1923, of a one sixty-fourth royalty interest in another tract of 40 acres, belonging to one Laney, about two miles a little west of north of petitioner's tract, for $16,000. There was a producing well on the farm adjoining the Laney tract about one half mile west of Laney's property. Both the offer and the sale were for all the minerals which might be in the land and not merely for the oil in the first sand.

Upon such slender evidence petitioner seeks to sustain his claim to a discovery value of $80,000. It will be observed that both the offer to buy a portion of the petitioner's royalty interest and the sale of the Laney royalty interest were made a few days before petitioner's discovery date, although the regulations require that fair market value be determined " at the date of discovery or within thirty days thereafter." Treasury Regulations 65, art. 221. Moreover, it was clearly demonstrated here that the only productive sand discovered on petitioner's tract was the first, or Smackover, sand, and the discovery value to be ascertained, of course, is the value of that sand. *Ibid*, art. 222. The offer received by petitioner, even if

depletion allowance based on discovery value shall not exceed 50 per centum of the net income (computed without allowance for depletion) from the property upon which the discovery was made, except that in no case shall the depletion allowance be less than it would be if computed without reference to discovery value.

Sec. 214. (a) In computing net income there shall be allowed as deductions:

\* \* \* \* \* \* \*

(9) In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the Commissioner, with the approval of the Secretary. In the case of leases the deduction allowed by this paragraph shall be equitably apportioned between the lessor and lessee.

accorded the full evidential value which a mere offer, as opposed to a sale, seldom obtains, was for a royalty interest in *all the minerals* in the tract. Likewise, the sale by Laney was of all the minerals, not merely those in a particular sand. An offer to buy, or a purchase of an interest in, oil that has been discovered in a particular sand and all oil which may be later discovered in other sands in the area is obviously not data which can be of use in determining the discovery value of a single oil sand.

The evidence submitted fails to show that the discovery value of petitioner's royalty interest in the 60-acre tract was any greater than the amount of $32,500 allowed by the respondent.

2. The second issue involves the depletion allowable on the 20-acre tract of oil and gas land owned by the petitioner in fee, but this issue is disposed of by the stipulation, *supra*, wherein the parties agreed upon all the facts and factors necessary to calculate such depletion. Depletion will be allowed accordingly.

3. The third issue and the affirmative issue raised by respondent, being closely related, may be considered together: (a) Whether the bonus received by petitioner for granting an oil and gas lease constituted income or a return of capital; and (b) whether the bonus was subject to depletion. The petitioner had an 80-acre tract, the south 20 acres of which he retained in fee throughout the taxable year and developed himself. The north 60 acres he leased, retaining a one-eighth royalty interest on the whole. Of the 60 acres so leased, there was a south 20-acre tract upon which petitioner received as a bonus, out of the proceeds of the sale of seven sixteenths of the oil and gas produced from the working interest, $35,000, which was made up of payments aggregating $14,348.42 in 1923 and $20,651.58 in 1924. It is this bonus which is in question here. Depletion of the bonus, as calculated under T.D. 3938, had already been allowed by respondent. Whether the bonus was depletable, a question raised by the respondent by an affirmative plea in his answer to safeguard the Government's interest, he now waives in his brief, since it is disposed of by the Supreme Court's decision in *Murphy Oil Co.* v. *Burnet*, 287 U.S. 299, allowing depletion. This leaves the question of whether the bonus was capital and how depletion is to be calculated. The relevant provision of the statute is set out in the margin, *ante*.

The question has been settled by the Supreme Court's decision in *Burnet* v. *Harmel*, 287 U.S. 103, and the *Murphy Oil Co.* case, *supra*. A mining or oil lease bonus, the court said, represents income and is to be taxed as such, but because of the peculiar nature of the business, it also represents in part a return of capital in the same way as a lease royalty, and to the extent of such capital investment is subject to depletion. In the *Murphy* case, the court reviewed and

approved the method employed by the Commissioner. (See Treasury Regulations 45, art. 215, and the corresponding provision, Regulations 65, and T.D. 3938, V-2 C.B. 117, Nov. 13, 1926, amending the regulations.) This method differs from former practice only in the situation where the Commissioner properly finds that the sum of the bonus and expected royalties exceeds the lessor's capital investment in the oil in the ground. In such case, the allowable depletion is to be apportioned ratably between bonus and estimated royalties. If bonus and expected royalties do not exceed petitioner's capital investment, the whole bonus received in advance of royalties will be treated, as hitherto, as a return of capital and depletion allowed accordingly.

Here the Commissioner determined depletion in accordance with the method described in T.D. 3938. This method having been upheld by the court and the amount so determined not having been questioned by petitioner, the depletion allowed by respondent in his notice of deficiency is approved.

4. We now pass to the last issue, touching certain incidental expenditures made by petitioner in connection with his operations on his oil land held in fee, including lease equipment and drilling, of $39,971.81. All these expenditures were capitalized by the petitioner for the respective years. The question is whether they should be returnable, as petitioner contends, through depreciation, or as respondent urges, following article 225, Treasury Regulations 65, through depletion.

This question has now been put at rest by the Supreme Court's decision in *United States* v. *Dakota-Montana Oil Co.*, 288 U.S. 459. Cf. *Burnet* v. *Jergins Trust*, 288 U.S. 508, and *Petroleum Exploration Co.* v. *Burnet*, 288 U.S. 467. The legislative history of depletion and depreciation allowed on oil production was reviewed by the Supreme Court in the *Dakota-Montana* case, and the following conclusion reached:

Thus the Acts of 1918, 1921 and 1924 were consistently construed by the regulations to permit a depletion, but not a depreciation allowance for the costs of development work and drilling, which were treated for this purpose either as a part of the cost or an addition to the discovery value of the oil in the ground. The administrative construction must be deemed to have received legislative approval by the reenactment of the statutory provision, without material change. No. 80, *Murphy Oil Co* v. *Burnet*, decided December 5, 1932; *Brewster* v. *Gage*, 280 U.S. 327, 337.

These expenditures for nonphysical improvements will accordingly be returned through depletion.

*Judgment will be entered under Rule 50.*